Kenneth **WYNDER,** Plaintiff–
Appellant,

v.

James W. **MCMAHON,** David Spahl, Robert Jones, Louis B. Barbaria, Craig Masterson, Individually, Defendants–Appellees,

John Keats, Marine Midland Bank, Defendants.

Docket No. 02–9101.

United States Court of Appeals, Second Circuit.

Argued: Dec. 17, 2003.

Decided: March 1, 2004.

Richard J. Merritt, Lindenhurst, NY, for Plaintiff–Appellant.

Susan H. Odessky, Assistant Attorney General, for Eliot Spitzer, Attorney General of the State of New York, for Defendants–Appellees.

Before: WALKER, Chief Judge, CALABRESI and CABRANES, Circuit Judges.

CALABRESI, Circuit Judge.

In February 1999, plaintiff-appellant Kenneth Wynder filed a civil rights complaint in the United States District Court for the Eastern District of New York. Twice the district court (Trager, *J.*) dismissed his complaint with leave to replead, imposing specific conditions on the form and content of the pleading. When, in the district court's estimation, Wynder's second amended complaint did not meet those conditions, the court dismissed the complaint pursuant to Fed.R.Civ.P. 41(b) and directed the clerk to close the case. In this appeal, we must determine (1) whether the district court may—on pain of dismissal—require a plaintiff's complaint to meet a higher pleading standard than that set forth in Fed.R.Civ.P. 8(a); and, if it may not, (2) whether Wynder's second amended complaint in fact complies with

the dictates of Rule 8.[1] We believe the answer to the first question is no; and to the second, yes. Accordingly, we vacate and remand this case for further proceedings.

## I.

Kenneth Wynder is an African–American male who, at all times relevant to this suit, served as a New York State Police Officer. His 1999 complaint alleged race discrimination and attendant violations of his rights under a cavalcade of constitutional and statutory provisions: the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, as well as 42 U.S.C. §§ 1981, 1983, 1985, 1986, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and sections of the New York State Constitution. Plaintiff's claims all stemmed from a variety of alleged adverse employment actions occurring between 1992 and 1998. His complaint, totaling 14 pages with 64 paragraphs, described a wide array of acts and decisions by defendants which, he believes, collectively constituted a "common conspiratorial scheme" to harass him and to drive him out of the state police force—all on account of his race.

Wynder's claims have followed a long and winding road through the pleadings stage. Initially, defendants responded to his allegations with a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) & (b)(6). They offered a range of procedural grounds for dismissal, including Eleventh Amendment immunity, absolute and qualified individual immunity, and failure to state a claim. In January 2000, the district court dismissed Wynder's complaint for an entirely distinct reason which it raised on its own motion: plaintiff's failure "to articulate in a logical way what [his] theory of the case is and what [his] statutory claim is." The court ordered Wynder to provide a "very detailed complaint against each person, separately numbered, what your claim is against that person and what evidence you have as of this date as against that person, and what legal theory you're going against that person."[2] The complaint, the court insisted, should be written in "plain English."

Wynder, responding to the court's order, filed a first amended complaint in March 2000.[3] In October of the same year, defendants again moved for dismissal, on the same grounds as before. And again, the district court, after reserving judgment on their motion, dismissed the complaint—with leave to replead—because the complaint did not live up to the terms of its order. The court was unsatisfied with what it termed "cosmetic" changes to the pleading, and reminded Wynder that the special solicitude offered to *pro se* litigants in the construction of complaints did not extend to counseled plaintiffs. Wynder's counsel was further cautioned that a second failure to comply with the court's directions regarding the complaint would result in outright dismissal.

In January 2001, plaintiff filed a second amended complaint, by now totaling 26 pages and 90 paragraphs. For the third time, defendants submitted their same Rule 12(b) motion. And for the third time, the district court found the complaint wanting without considering defendants' motion. In August 2002, it dismissed the

---

**1.** Plaintiff's second amended complaint is attached as an appendix to this opinion.

**2.** The court added: "You've sued five people. Each one is to be dealt with separately. Each of them, you're going to allege whatever evidence you have in detail as to that person, and your legal theories, and your cite of authority, statutory and case law."

**3.** This complaint added defendant Keats.

second amended complaint without prejudice, pursuant to Fed.R.Civ.P. 41(b), which allows for involuntary dismissals for "failure of the plaintiff to prosecute or to comply with ... [an] order of court." In its memorandum and order, the district court characterized the second amended complaint as "virtually identical" to the first, and reiterated the criticism that the latest rendition (1) did not separate out the legal claims against each of the defendants, and (2) did not succinctly and lucidly state the nature of his various allegations.[4]

Although the dismissal was, strictly speaking, "without prejudice," if affirmed it would likely prove fatal to Wynder's claims: as plaintiff acknowledged at oral argument before us, the statute of limitations has run on most, if not all, of his various causes of action. *See, e.g., Pearl v. City of Long Beach,* 296 F.3d 76, 79 (2d Cir.2002) (applying a three-year statute of limitations to a Section 1983 claim arising from events occurring in New York); *Lightfoot v. Union Carbide Corp.,* 110 F.3d 898, 907 (2d Cir.1997) (applying a three-year statute of limitations to a New York Human Rights Law claim); *Cornwell v. Robinson,* 23 F.3d 694, 706 (2d Cir.1994) (Title VII suit must be commenced within 90 days of receiving EEOC right-to-sue letter). Under the circumstances, then, Wynder's ability to seek vindication in federal court on these claims depends on whether or not we reinstate his complaint.

## II.

■ On appeal, Wynder challenges the district court's Rule 41(b) dismissal. We have jurisdiction to consider his challenge because a dismissal without prejudice that does not give leave to amend and closes the case is a final, appealable order under 28 U.S.C. § 1291. *See Elfenbein v. Gulf & Western Indus., Inc.,* 590 F.2d 445, 448 (2d Cir.1978) (if plaintiff is not given leave to amend, the order of dismissal is final and appealable); *Allied Air Freight, Inc. v. Pan Am. World Airways, Inc.,* 393 F.2d 441, 444 (2d Cir.1968) ("dismissals with and without prejudice are equally appealable as final orders"). In considering the merits, we review Rule 41(b) dismissals for abuse of discretion. *See Spencer v. Doe,* 139 F.3d 107, 112 (2d Cir.1998). And, of course, a district court abuses its discretion when "its decision rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or ... its decision—though not necessarily the product of a legal error or a clearly erroneous factual finding—cannot be located within the range of permissible decisions." *Zervos v. Verizon New York, Inc.,* 252 F.3d 163, 169 (2d Cir.2001) (footnote omitted).

At bottom, Wynder's position on appeal is that it is legal error to impose conditions that exceed the requirements of Rule 8 and then to punish the plaintiff, by means of dismissal, for failure to meet those conditions. He argues that his second amended complaint is valid—and the court's dismissal correspondingly invalid—because the complaint meets the minimal threshold established by Rule 8(a) and *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). For their part, defendants argue that it is within the province of the district court's discretion to impose specific pleading requirements on a counseled plaintiff, and, in any event, that Wynder's second amended complaint is dismissable.[5] For the reasons that follow,

---

**4.** The court did not reference Fed.R.Civ.P. 8(a) in reaching this conclusion.

**5.** The key inquiry, on their view, is *not* whether the complaint meets the bare-bones standards of Rule 8. Rather, it is whether Judge Trager properly balanced considerations of

we conclude that defendants are wrong on both counts: (a) the district court may not order, under penalty of dismissal, that plaintiffs file a complaint that goes above and beyond what Rule 8 requires, and (b) the second amended complaint passes muster under Rule 8.

### A.

It is hardly debatable that the district court's order called for the plaintiff to supply a complaint that substantially exceeded the requirements of Rule 8. Under *Swierkiewicz*, Rule 8 pleading is extremely permissive. 534 U.S. at 512–13, 122 S.Ct. 992. As the Supreme Court there noted, Rule 8(a)(2) provides (a) that a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief," and (b) that such a statement simply " 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.' " 534 U.S. at 512, 122 S.Ct. 992 (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).[6] In the case before us, the district court demanded far more than a short and plain statement of the claims and the grounds upon which they rest.

Plaintiff was called upon to provide, *inter alia*, (1) "legal theor[ies]," (2) specific "authority, statutory and case law," (3), "evidence ... in detail," and (4) separate claims as to each defendant. Our case law

makes clear that the first three are *not* requirements imposed by Rule 8. First, " 'federal pleading is by statement of claim, not by legal theory.' " *Northrop v. Hoffman of Simsbury, Inc.*, 134 F.3d 41, 46 (2d Cir.1997) (*quoting Flickinger v. Harold C. Brown & Co.*, 947 F.2d 595, 600 (2d Cir.1991)). Second, even leaving aside case law and other authorities, Rule 8's "liberal pleading principles" do not permit dismissal for " 'failure in a complaint to cite a statute, or to cite the correct one .... Factual allegations alone are what matters.' " *Id.* (quoting *Albert v. Carovano*, 851 F.2d 561, 571 n. 3 (2d Cir.1988) (in banc)). Third, "[m]ore extensive pleading of fact[s] is not required" under Rule 8 because the Federal Rules "provide other devices besides pleadings that will serve to define the facts and issues." *Scutti Enters., LLC. v. Park Place Entm't Corp.*, 322 F.3d 211, 215 (2d Cir.2003) (internal quotation marks omitted). Finally, nothing in our past precedents requires plaintiffs formally to separate claims defendant by defendant in order to satisfy the Rule.

### B.

■ Rule 41(b) clearly authorizes dismissal where plaintiffs have "fail[ed] ... to comply with these rules [i.e. the Federal Rules of Civil Procedure]," including, of course, Rule 8. Fed R. Civ. P. 41(b); *see also Mangan v. Weinberger*, 848 F.2d 909, 911 (8th Cir.1988) (the court may dismiss

judicial economy, prejudice to the defendant, and solicitude to the plaintiff in ordering dismissal as a result of non-compliance with his explicit order—factors relevant to a dismissal determination under Rule 41.

**6.** Other provisions of Rule 8 are inextricably linked to Rule 8(a)'s simplified notice pleading standard. Rule 8(e)(1) states that "[n]o technical forms of pleading or motions are required," and Rule 8(f) provides that "[a]ll pleadings shall be so construed as to do substantial justice." This simplified notice pleading standard relies on liberal discovery rules

and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims. "The provisions for discovery are so flexible and the provisions for pretrial procedure and summary judgment so effective, that attempted surprise in federal practice is aborted very easily, synthetic issues detected, and the gravamen of the dispute brought frankly into the open for the inspection of the court." 5 C. Wright & A. Miller, Federal Practice and Procedure § 1202, p. 76 (2d ed. 1990).

under Rule 41(b) a complaint which fails to comply with Rule 8); *Nevijel v. North Coast Life Ins. Co.*, 651 F.2d 671, 673 (9th Cir.1981) (same). But does the provision empower district courts to condition the perdurance of a lawsuit on requirements that specifically exceed those set forth in the Federal Rules—in this case additional pleading imperatives absent from Rule 8(a)? We have not previously answered this question. *Cf. Simmons v. Abruzzo*, 49 F.3d 83, 87 (2d Cir.1995) (noting that district courts may dismiss a deficient complaint either for failure to follow Rule 8 or, under Rule 41(b), "for failure to comply with a court order, treating the noncompliance as a failure to prosecute," but not discussing how the two rules interact) (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)).[7] We do so now.

We assume for the moment that the plaintiff has met the basic requisites of Rule 8. On that assumption, a Rule 41(b) dismissal could properly rest only on one of two other grounds: that plaintiff has failed (1) to prosecute; or (2) to comply with a court order. But neither of these grounds can justify the imposition of heightened pleading requirements.

Rule 8 would become a dead letter if district courts were permitted to supplement the Rule's requirements through court orders demanding greater specificity or elaboration of legal theories, and then to dismiss the complaint for failure to comply with those orders. Under such a regime, what Rule 8 currently forbids—dismissals based on stringent pleading standards—could occur indirectly through Rule 41(b). This would not only be troublesome in the individual case, where a plaintiff would be held to account for omissions deemed immaterial under the Rules; it would be particularly problematic across the span of cases. For then district courts could impose disparate levels of pleading requirements on different sorts of plaintiffs. In both respects, Rule 8(a)'s purposes—to lower the entry barriers for federal plaintiffs and to establish prospectively a rule common to all litigants—would be violated.[8]

In defending the district court's decision, defendants advert to *Nita v. Connecticut Department of Environmental Protection*, 16 F.3d 482 (2d Cir.1994), which details factors relevant to a Rule 41 dismissal determination.[9] The *Nita* factors,

---

**7.** In *Simmons*, our vacatur rested in part on the fact that the district court never explicitly ordered the plaintiff to provide a clearer and more concise statement of his claims. *See id.* at 88. But we did not discuss whether, if the court had so ordered and the plaintiff had subsequently failed to comply with that order, the initial complaint—which satisfied Rule 8(a)—could have been dismissed for that compliance failure.

**8.** Nor is the limitation that we today recognize on a district court's use of Rule 41(b) likely restricted to Rule 8. The well-settled rule is that a court should not grant a Rule 12(b)(6) motion to dismiss unless "it appears [certain] that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80

(1957). It would be very strange indeed if a district court could, on pain of dismissal pursuant to Rule 41, require a plaintiff to adduce more facts or to meet a higher burden than that required by Rule 12(b)(6). And this same principle would seem to obtain with respect to the various floors and ceilings established by other Federal Rules as well. Of course, since such situations are not currently before us, we need not, and hence do not, so hold today.

**9.** *Nita* sets forth the following factors:

▮ the duration of the plaintiff's failures [to comply], [2] whether plaintiff had received notice that further delays would result in dismissal, [3] whether the defendant is likely to be prejudiced by further delay, [4] whether the district judge has taken care to

however, reveal only what is meant by "failure to prosecute or to comply with [the Federal Rules of Civil Procedure] or any order of court" and what sorts of safeguards the court must nevertheless adhere to before issuing a Rule 41(b) dismissal. The Rule is intended to serve as a rarely employed, but useful, tool of judicial administration available to district courts in managing their specific cases and general caseload.[10] *Nita* does not imply that the Rule gives license to courts to impose higher standards than those set out in the Federal Rules of Civil Procedure.

## C.

■■■ It follows that the district court could only correctly dismiss Wynder's complaint at this stage if the complaint in fact failed to meet the minimum pleading standards set forth in Rule 8(a). Dismissals for failure to comply with Rule 8(a), like dismissals under Rule 41(b), are reviewed for abuse of discretion. *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir.2000). The key to Rule 8(a)'s requirements is whether adequate notice is given. 2 James Wm. Moore et al., Moore's Federal Practice § 8.04[1] (3d ed. 1999) ("The rule is fashioned in the interest of fair and reasonable notice, not technicality."). In the case before us, plaintiff's submission is a model of neither clarity nor brevity, and we can sympathize with the district court's

displeasure with it, but it is sufficient to put the defendants on fair notice. In *Simmons*, we defined fair notice as "that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so that it may be assigned the proper form of trial." 49 F.3d at 86 (internal quotation marks omitted); *see also Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir.1988) (fair notice is judged by whether the complaint enables defendants "to answer and prepare for trial"). Wynder's complaint, at its core, achieves these ends.[11]

It plainly asserts, among other things, that plaintiff, as a counselor at the New York State Police Academy, was required to perform tasks involving manual labor that white counselors were not required to perform (¶ 5); that when he was interviewed for a position with the Bureau of Criminal Investigation, he was made to stand facing a picture depicting a Civil War battlefield and a Confederate flag, thereby being subjected to racial animus (¶¶ 20–21); that the denial of his promotion was in retaliation for complaining to the internal affirmative action officer and the EEOC about such discriminatory acts (¶¶ 17–19, ¶¶ 22–23); that defendants created a hostile work environment, in an effort to force his resignation, by conducting a malicious—and baseless—criminal investigation into his failure to report a

strike the balance between alleviating court calendar congestion and protecting a party's right to due process and a fair chance to be heard, and [5] whether the judge has adequately assessed the efficacy of lesser sanctions.
*Nita*, 16 F.3d at 485 (internal quotation marks omitted).

10. We have characterized these dismissals as "harsh remed[ies]" that are "appropriate only in extreme situations." *Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir.1996).

11. The fact that both *Salahuddin* and *Simmons* involved *pro se* plaintiffs whose pleadings we read more liberally, *see Green v. United States*, 260 F.3d 78, 83 (2d Cir.2001), does not lessen the relevance of the two opinions to the instant case, because the basic requirements of Rule 8 apply to self-represented and counseled plaintiffs alike. *See Scutti Enters., LLC. v. Park Place Entm't Corp.*, 322 F.3d 211, 217 (2d Cir.2003) (remanding case on ground that certain claims in counseled plaintiff's complaint were adequately pled under the generous standards of Rule 8(a)).

stolen weapon (¶¶ 32–39); and that certain named defendants falsely filed and litigated administrative charges against him (¶¶ 40–42).

Furthermore, while Rule 8 does not necessarily require—as the district court here did—that the complaint separate out claims against individual defendants, each of the named defendants-appellees is explicitly tied to one or more of Wynder's allegations. He asserts, *inter alia*, that defendant Masterson directed him to perform the manual labor not required of white counselors (¶ 16); that defendant Spahl improperly forced him back to work and retaliated against him for complaining to Spahl's superiors and others (¶¶ 25–26); that defendant McMahon initiated the criminal investigation in bad faith (¶¶ 30, 34, 36); that defendant Barbaria participated in that investigation (¶¶ 33–34, 37–38); and that defendant Jones suppressed exculpatory evidence out of discriminatory animus (¶¶ 41–42). Moreover, just as in *Simmons,* the defendants themselves "did not even remotely suggest" in their motion papers that the amended complaint "did not give them notice of the substance of [plaintiff's] claims, or that it was otherwise unintelligible." 49 F.3d at 87.[12]

Based on the foregoing, we find that Wynder's second amended complaint is sufficient to meet the lenient standard of Rule 8. Dismissal pursuant to the rule "is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Salahuddin,* 861 F.2d at 42. This is not such a case. While we have insisted that complaints be concise "because unnecessary prolixity in a pleading places an un-

justified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage," *id.* (internal quotation marks omitted), *see also* Fed.R.Civ.P. 8(e), plaintiff's long submission does not overwhelm the defendants' ability to understand or to mount a defense. And while we of course believe that "form matters in our system of adjudication," *Webb v. Goord,* 340 F.3d 105, 112 (2d Cir.2003) (emphasis deleted), this pleading is not so lacking in form as to warrant dismissal.

## III.

Because a Rule 41(b) dismissal would only be proper if the complaint did not pass muster under Rule 8, and because this complaint exceeds the Rule 8 floor, we find that the district court's order was an abuse of discretion. Accordingly, Wynder should be permitted to proceed on his second amended complaint. That is not to say, of course, that all aspects of the complaint will ultimately survive dismissal. For one thing, there is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted. Although, reading the complaint carefully, the individual defendants can discern which claims concern them and which do not, the complaint accuses *all* of the defendants of having violated *all* of the listed constitutional and statutory provisions. As a result, a series of 12(b)(6) motions to dismiss would lie to permit each particular defendant to eliminate those causes of action as to which no set of facts has been identified that support a claim against *him.*

---

**12.** Indeed, defendants do not specifically raise compliance with Rule 8(a) in their appellate submission; they focus largely on the district court's power to condition dismissal on fail-

ure to comply with its order, and discuss only briefly what they view to be the deficiencies in the pleadings themselves.

Moreover, we by no means preclude the district court from striking those particular portions of the complaint, if any, that do not satisfy Rule 8. We leave that specific determination to the discretion of that court. *See Salahuddin,* 861 F.2d at 43 (suggesting that courts may simply strike redundant or immaterial matter, leaving the facially valid claims to be litigated); *see also* Fed.R.Civ.P. 12(f) (court may strike any portions that are redundant or scandalous).

### IV.

We are satisfied that the core of Wynder's complaint is sufficient for purposes of Rule 8, and that the district court's *in toto* dismissal was improper. Accordingly, we VACATE the judgment of the district court and REMAND the case for further proceedings consistent with this opinion.

### APPENDIX

Kenneth WYNDER, Plaintiffs,

v.

James McMAHON, David Spahl, Robert Jones, Louis B. Barbaria, Craig Masterson, Josh Keats, Individually, and John Doe employees one through ten of the New York State Police who violated the Constitutional Rights of Plaintiff while operating under color of law or direction from named defendants, Defendants.

Civil Action Index No. 99 CV 0772.

United States District Court

Eastern District of New York.

March 13, 2000.

*SECOND AMENDED VERIFIED COMPLAINT*

*CIVIL COMPLAINT*

Plaintiff by his attorney, Richard J. Merritt, respectfully alleges:

### NATURE OF THE ACTION

1. This is an action for deprivation, by defendants while acting under color of State Law and/or custom of New York State Police pursuant to a common conspiratorial scheme, to violate Plaintiff's rights, privileges and immunities as guaranteed under the U.S. Constitution. Plaintiff is claiming violation of the First, Fourth, Fifth, Sixth, Eighth, Thirteenth and Fourteenth Amendments to the United States Constitution along with violations of 42 U.S.C. § 1981, 1983, 1985, 1986, 2000e and Title VII of the Civil Rights Act of 1964. Defendants also violated provisions of the New York State Constitution, New York State Labor Law, New York Executive Law § 296(6), New York Civil Service Law Sections § 75, § 76, and plaintiff makes common law claims against defendants and claims of invidious discrimination.

2. Plaintiff properly filed a complaint with EEOC and the claim was denied with a letter giving him the right to commence civil action within 90 days of receipt of notice.

### JURISDICTION

3. This Court has jurisdiction of the subject matter under 28 U.S.C. 1331, 1343. There is supplemental jurisdiction as to the claims based upon state law pursuant to 28 U.S.C. 1367.

4. Venue is proper in this judicial district pursuant to 28 U.S.C. 1391.

### THE PARTIES

5. Plaintiff, is a citizen of the United States of America who was injured by the acts and actions of the defendants. Plain-

tiff is a resident of the State of New York, County of New York.

6. Defendant, JAMES McMAHON (hereafter "McMahon"), is sued personally and in his individual capacity. At all times relevant, he was the duly appointed Superintendent of the New York State Police (hereafter NYSP). NYSP is a paramilitary organization and McMahon set policy, custom and practice while giving orders which were discriminatory against plaintiff. McMahon had the power to hire and fire employees at all relevant times. He had the power to terminate the employment of plaintiff at all relevant times.

7. Defendant, DAVID SPAHL (here after "Spahl"), is sued personally and in his individual capacity, at all times relevant to this complaint was employed by the NYSP. He is presently a Captain with the NYSP residing in the State of New York and at all relevant times was subject to the command and authority of McMahon.

8. Defendant, ROBERT JONES, (here after "Jones") is sued personally and in his individual capacity, at all times relevant to this complaint was employed by NYSP, legal department, assistant chief counsel. He acted in direct violation of plaintiff's constitutional rights and privileges. Upon information and belief, Jones acted outside the scope of his employment by deliberately hiding exculpatory evidence, prosecuting plaintiff utilizing false evidence and testimony. At all relevant times, Jones was subject to the command and authority of McMahon.

9. Defendant, LOUIS B. BARBARIA, (here after "Barbaria") is sued personally and in his individual capacity, at all times relevant to this complaint was employed by the NYSP assigned to Internal Affairs Division (here after IAD). At all relevant times, Barbaria was subject to the command and authority of McMahon.

10. Defendant, CRAIG MASTERSON, (here after "Masterson") is sued personally and in his individual capacity, at all times relevant was employed by the NYSP assigned to IAD. At all relevant times, Masterson was subject to the command and authority of McMahon.

11. Defendant JOSH KEATS, (here after "Keats") is sued personally and in his individual capacity, at all times relevant to this complaint was employed by NYSP. At all relevant times Keats was subject to the command authority of McMahon.

12. John Doe defendants one through ten are not named because their names are subject to discovery for acts and actions involved with a conspiracy to deprive plaintiff of his constitutional rights and to discriminate against plaintiff because of the color of his skin and his race. Upon information and belief, John Does purposefully created a hostile working environment aimed at plaintiff in their unlawful efforts to terminate plaintiff's employment. John Does were subject to the command and authority of McMahon.

### THE FACTS

13. At all relevant times, plaintiff was a State Trooper employed by the State of New York.

14. Plaintiff was first employed by the State of New York on March 30, 1987.

15. Plaintiff is an African American.

16. Plaintiff was appointed counselor at the NYSP Academy, Albany, N.Y. during 1992. Once appointed, plaintiff was directed by Masterson, to perform manual labor not required of white counselors. Masterson's order placed plaintiff in an involuntary servitude violating his 13th Amendment rights.

17. Plaintiff observed discriminatory practices involving black, new recruits and brought these discriminatory practices to the attention of Lt. Cook, the affirmative action officer. Plaintiff also pointed out the fact that there were no black instructors at the Acadamy in 1992.

18. Plaintiff's concerns were ignored requiring him to make an internal EEOC complaint

19. In retaliation for his complaint plaintiff was denied a promotion to the Bureau of Criminal Investigation (here after BCI) even though he was fully qualified for the position

20. Before being denied the promotion to BCI plaintiff was interviewed while being commanded to stand at attention facing a large picture of a civil war battlefield and a Confederate Flag

21. The interview was calculated to demean and impress upon plaintiff the racist nature of the interview

22. After the above interview plaintiff was ordered to Troop K, Peekskill. NY and denied promotions for which he was qualified and deserving. Defendants intentionally made an example of plaintiff in retaliation for his complaint.

23. Plaintiff was denied promotions to the date of his disability retirement award June 10, 1999. His performance evaluations were all excellent or outstanding Promotions were denied plaintiff in retaliation for his EEOC complaint.

24. On April 6, 1996, plaintiff suffered an on-duty car accident and was placed on sick leave for debilitating injuries he received in the accident. The police vehicle he was driving was hit on the driver's side by a civilian vehicle travelling at high speed when plaintiff responded to a police call.

25. Plaintiff was ordered back to work by defendant Spahl prior to being released for full duty by his treating physician. Plaintiff followed the order of his superior and reported to work. Following proper police procedures, plaintiff informed his superiors that he was still injured. He then requested a rule 14 hearing to determine his status. In retaliation for his request, he was threatened with disciplinary charges and ordered to leave the station house. After filing a grievance with his employer, Spahl was censured, but the censure letter was later secretly removed.

26. After being released by his treating physician, plaintiff returned to work February 17, 1997 but experienced severe discrimination and a hostile work environment in retaliation for filing a grievance against Spahl.

27. Plaintiff was diagnosed with a hernia during June of 1997 and took sick leave on June 29, 1997 for an operation to correct the hernia.

28. Prior to plaintiff returning to work, Internal Affairs Division (hereafter "IAD") attempted to access plaintiff's bank records at Marine Midland Bank. Under orders from McMahon, statements were made to bank officers that plaintiff was under criminal investigation for drug sales, money laundering and gun smuggling.

29. Plaintiff returned to work during September of 1997 and was immediately subjected to a drug test. NYSP drug testing policy required random drug testing. A random drug test was originally scheduled for July, 1997 but postponed to test plaintiff when he returned to work. This drug test was discriminatorily administered for the purpose of terminating plaintiff's employment and to cause him to suffer a hostile work environment. Defendants purposefully leaked the reason for postponement of the drug test causing other troopers to avoid contact with plaintiff

and to chill plaintiff's right to free speech and association guaranteed under the 1st Amendment.

30. During the period from January, 1997 through January 1998, without a reasonable belief of criminal activity, IAD conducted a criminal investigation into plaintiff's affairs. Commanded by McMahon, the criminal investigation involved surveillance of plaintiff in his neighborhood and contacting plaintiff's neighbors informing them that plaintiff was suspected of drug sales, money laundering and gun smuggling.

31. In furtherance of this investigation Capt Klusacek stated to Ms Brenda Bennie that plaintiff was living above his means and that IAD was investigating him for criminal charges.

32. During 1989 Plaintiff properly reported his weapon stolen. The weapon was recovered in 1990 by New York City Police (NYPD). Plaintiff was given a signed letter from his sergeant to retrieve the weapon from NYPD. Utilizing the letter, NYPD released the weapon to plaintiff Police records erroneously carried the weapon stolen until 1998. Plaintiff reported the gun in his possession to NYSP each year commencing in 1990 but NYSP negligently continued to carry the weapon stolen in the NYSPIN computer system.

33. McMahon ordered Barbaria to conduct a criminal investigation against plaintiff in 1997 and to subpoena plaintiff's bank records. The excuse for the investigation was stated as the failure to report his weapon stolen.

34. Upon information and belief, the gun investigation was instigated by Masterson approved by McMahon and conducted by Barbaria in a malicious and intentional effort to commence a criminal investigation aimed at terminating plaintiff's employment, creating a hostile work environment and casting dispersion in plaintiff's neighborhood.

35. McMahon was aware of the 18 month limitation prohibiting administrative discipline contained in Civil Service Law § 75 but continued the investigation to chill plaintiff's 1ST Amendment Constitutional Rights and to infringe on plaintiff's right to privacy.

36. Upon information and belief, Barbaria under orders from McMahon, continued the criminal investigation utilizing it to conduct a fishing expedition into plaintiff's private affairs. This was done even though McMahon and Barbaria knew § 75 of the Civil Service Law contained an administrative time bar. The investigation was commenced seven years after the gun was recovered. The investigation was part and parcel of a conspiracy to terminate plaintiff's employment, subject plaintiff to a deprivation of his constitutional rights and privileges and create a hostile work environment.

37. While Barbaria, Masterson and John Does conducted the aforesaid criminal investigation, plaintiff was ordered to give a sworn statement under threat of losing his employment. The forced sworn statement was taken from plaintiff in direct violation of his 5th and 14th amendment constitutional rights as set forth in *Garrity v. State of New Jersey*, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967). The sworn statement was further conducted in direct violation of provisions in the PBA contract with NYSP. The statement was taken after charges had been preferred against plaintiff in violation of the NYSP Administrative Manual requiring statement be given before charges are preferred.

38. A sworn statement was taken from plaintiff on January 20, 1998 by Barbaria.

Prior to commencing, plaintiff asked Barbaria:

"am I the target of a criminal investigation"

Barbaria gave an evasive answer but later testified that he had been conducting an extensive criminal investigation into plaintiff's affairs at the time of the statement. The recorded statement was taken in violation of plaintiff's 5th Amendment rights and in violation of provisions in the PHA contract with NYSP.

39. The taking of the sworn statement and the intentional deceit were part and parcel of NYSP policy and custom to deprive plaintiff of his constitutional rights in direct violation of 42 U.S.C. § 1983.

40. On December 28, 1997, plaintiff was charged with intentionally filing a false bankruptcy petition which is a federal crime. After a two day hearing, the charges were dismissed while other charges were affirmed by a biased hearing board. The bias nature of the hearing board was the direct result of McMahon picking two member of the three man Board causing a violation of plaintiff's 8th Amendment Constitutional Rights.

41. During a two day hearing held on January 27 and 29, 1998, Jones obtained exculpatory evidence from Sgt. Nohia that negated one of the charges against plaintiff. Because of the color of plaintiff's skin and the conspiracy to terminate plaintiff's employment, the exculpatory evidence was withheld from the hearing. Jones refused to call Sergeant Nohai as a witness even though Sgt. Nohai sat in the witness room for one entire day waiting to be called. Sgt. Nohai later testified that he had the exculpatory evidence in his possession. Jones had previously interviewed Sgt. Nohia.

42. Jones was not acting in a protected capacity when he intentionally obstructed justice and no immunity attaches to an intentional unlawful act by a prosecutor.

43. Acting under orders from McMahon, the names of minority Troopers employed by NYSP were placed on the black board in IAD. This was done to mark minority troopers for discriminatory treatment by IAD.

44. Plaintiff's name was outlined in "Red" on the IAD board signifying he was being singled out for specific discriminatory treatment. Other troopers were allowed to view the board and see the names of individuals being singled out for discriminatory treatment. Upon information and belief this was ordered by McMahon in an intentional effort to create a hostile work environment and to chill plaintiff's first amendment right of association.

45. Upon information and belief, Spahl communicated with Masterson in IAD to repeatedly bring false charges against plaintiff. Both officers knew or should have known that there was no foundation for the charges. The bringing of false charges, administrative prosecution of the false charges, the bias nature of the Board that heard the charges and the conviction contrary to the evidence was part of a plan or scheme to terminate plaintiff's employment.

46. Upon information and belief, McMahon caused an administrative subpoena to be issued to Marine Midland Bank for plaintiff's confidential information which subpoena demanded:

"1. All documents pertaining to all open or closed checking, savings, NOW; Time, or other deposit or checking accounts in the name of or under signature authority of any of the named parties or entities, including but not limited to:

a. Signature cards;

b. Corporate board authorization minutes or partnership resolutions;

c. Hank statements;

d. Canceled checks;

e. Deposit tickets;

f. Items deposited;

g. Credit and debit memoirs; and

h. Form 1099, 1089, or back-up withholding documents.

2. All documents pertaining to open or closed bank loans or mortgage documents, reflecting loans made to or co-signed by any of the named parties or entities, including but not limited to:

a. Loan applications;

b. Corporate board authorization minutes or partnership resolutions;

c. Loan Ledger sheets;

d. Documents (checks, debit memos, cash in tickets, wires out, etc.) reflecting the means by which loan repayments were made;

e. Documents (bank checks, credit memos, cash out tickets, wires out, etc.) reflecting disbursements of the loan proceeds;

f. Loan correspondence files, including but not limited to:

   i. Letters to the bank;

   ii. Letters from the bank;

   iii. Notes, memoranda, etc. to the file;

g. Collateral agreements and documents;

h. Credit reports;

i. Financial statements;

j. Notes or other instruments reflecting the obligation to pay;

k. Real estate mortgages, chattel mortgages or other security instruments for loans;

l. Forms 1099, 1089 or back-up withholding documents; and

m. Loan amortization statements.

3. All documents pertaining to Certificates of Deposit purchased or redeemed by any of the named parties or entities, including but not limited to:

a. Copies of the certificates;

b. Corporate board authorization minutes or partnership resolutions;

c. Documents (checks, debit memos, cash in tickets, wires in, etc.) reflecting disbursements of the proceeds of any negotiated CD's;

e. Records reflecting interest earned, withdrawn or reinvested;

f. Forms 1099, 1089 or back-up withholding documents.

etc., etc. . . . . . . ."

The issuing of the subpoena violated Part 485.1 of the New York State Executive Law. The subpoena was issued without a hearing being scheduled in violation of New York Administrative Law. Without providing notice to plaintiff and an opportunity to quash the subpoena, issuance of the subpoena violated the Federal Financial Privacy Act.

47. Upon information and belief, all defendants conspired to violate the constitutional rights and privileges of plaintiff by obtaining his private banking records using the private records to bring false charges and to deprive plaintiff of "due process" under the 5th and 14th Amendments.

48. Upon information and belief McMahon, Jones and John Doe defendants caused the subpoena to be served on Ma-

rine Midland Bank in violation of NYSP Administrative procedures.

49. During a hearing held on January 27 and 29, 1998, wherein defendants produced plaintiff's bank records and offered them into evidence, Jones refused to produce the subpoena and the biased hearing board unlawfully accepted the records into evidence over objection of plaintiff's counsel. The biased board refused to either mark the subpoena or enter it into evidence.

50. Upon information and belief because of plaintiff's race and the color of his skin, defendants refused to produce a material witness at the hearing. The witness was listed on the charges against plaintiff. This was a part and parcel of a common scheme or plan by McMahon and carried out by defendants to prevent plaintiff from receiving a fair hearing and to prevent procedural due process from being provided to plaintiff.

51. The testimony of Mr. Gregory P. Schreffler New York State Police Financial Crimes Unit Albany, New York was denied by a bias hearing board of NYSP after testimony of Barbaria established Schreffler was both material and necessary to establish plaintiff's innocence. NYSP, through a policy enforced by McMahon, administered by Jones and others, intentionally violated the "due process" rights of plaintiff by refusing to produce this vital witness.

52. Two hearings were conducted by NYSP utilizing three hearing officers at each hearing. Two officers at each hearing were hand picked by McMahon to decide false charges against plaintiff. Plaintiff was deprived of a fair hearing by a biased board. Plaintiff was denied discovery prior to the hearings in violation of his due process rights under the 5th and 14th

Amendments. Plaintiff was denied copies of police records and reports contained in his personnel file which would have shown improper and unlawful police procedures. Plaintiff's constitutional right against being deprived of "property" without due process was violated through the use of a bias hearing board

53. Defendants conspired to create a constructive discharge of plaintiff under Title VII of the Civil Rights Act by deliberately creating working conditions so difficult, hostile and unpleasant that a reasonable person in the plaintiff's shoes would have felt compelled to resign. The powers exercised by McMahon and the other defendants in excess of the power granted to their positions, placed their acts and action under the purview of Title VII of the Civil Rights Act through violating the rights, privileges and immunities of plaintiff granted by the United States Constitution

54. Contractual rights contained in the PBA employment contract were denied plaintiff during the investigation and hearing and these rights have been ruled property rights under the United States Constitution Thereby defendants deprived plaintiff of property rights without providing "due process" in direct violation of the 5th and 14th Amendments

55. Through the foregoing acts and actions of the defendants, plaintiff was caused to suffer damages.

### AS AND FOR A FIRST CAUSE OF ACTION

56. Plaintiff incorporates by reference all of the allegations contained in paragraphs numbered 1 through 55.

57. Defendants singled plaintiff out because of his race the color of his skin and the fact that he was attempting to protect the rights of other members of his race, to

be denied constitutional rights and privileges.

58 When plaintiff attempted to redress the discriminatory practices of defendants, he was subjected to a full criminal investigation by IAB in retaliation. Upon information and belief, defendants intentionally created a hostile work environment for the purpose of forcing plaintiff to quit his employment.

59. Upon information and belief, as a result of plaintiff's participation and activities to protect his rights and the rights of other African Americans, he was harassed, subjected to derogatory treatment and repeatedly charged with false accusations in retaliation.

60. The acts of defendants were accomplished pursuant to a custom and practice established by McMahon and the other defendants. Plaintiff's right to free speech and association was limited, curtailed and chilled in a direct violation of First Amendment Rights.

61. That such abridgments are in direct violation of the Constitution of the United States the First, Fifth and Fourteenth Amendments thereof and the Civil Rights Statutes of the United States including 42 U.S.C. § 1983.

62. By reason of the aforementioned customs, practices, and policies, defendants denied plaintiff his constitutional rights and privileges.

63. Because of the malicious and intentional nature of the acts of defendants, plaintiff is entitled to recover both compensatory and punitive damages.

### AS AND FOR A SECOND CAUSE OF ACTION

64. Plaintiff incorporates by reference the allegations contained in paragraphs numbered 1 through 63.

65. Upon information and belief, defendants intentionally discriminated against plaintiff because of the color of his skin and his race. Defendant's created a hostile work environment in violation of Title VII of the Civil Rights Act.

66. Defendant's actions amounted to a constructive discharge from plaintiff's employment under Title VII of the Civil Rights Act.

67. By reason of defendants acts, actions and conspiracies, plaintiff was caused to suffer loss of earnings, loss of accrued benefits and loss of advancement opportunities, mental anguish, pain and suffering.

68. Defendant's actions were intentional, willful and malicious entitling plaintiff to judgment against defendants with an award of compensatory and punitive damages.

### AS AND FOR A THIRD CAUSE OF ACTION

69. Plaintiff incorporates by reference each allegation contained in paragraphs numbered 1 through 68.

70. Upon information and belief, defendants intentionally discriminated against plaintiff based on his race in violation of New York State Executive Law, Human Rights Law, Section 290 et. seq.

71. That defendants have violated New York Labor Law in failing or refusing to compensate plaintiff during his period of sickness which sickness was caused by the deliberate and willful acts and actions of defendants.

72. After dismissing charges against plaintiff claiming he intentionally filed a false and perjurious bankruptcy petition, defendants, made a complaint to the FBI. This complaint to the FBI was done in furtherance of a common scheme or plan to injure plaintiff.

73. By reason of defendants discrimination against plaintiff, he suffered a loss of: 1) earnings, 2) accrued benefits, and 3) advancement opportunities. In addition plaintiff has suffered mental trauma, great pain and mental anguish.

74. Furthermore, said actions on the part of the defendants were intentional, willful and malicious entitling plaintiff to compensatory and punitive damages.

### AS AND FOR A FOURTH CAUSE OF ACTION

75. Plaintiff incorporates by reference the allegations contained in paragraphs numbered 1 through 74

76. Plaintiff was the subject of discriminatory and derogatory treatment because of his activity in attempting to protect the rights of black state troopers and for his stand on constitutional rights. Plaintiff was caused to suffer a severe mental disability and declared by the State of New York to be disabled and unfit to perform further duties as a New York State Trooper. After being declared disabled and granted a disability retirement, NYSP refused to issue plaintiff a retiree's ID card further displaying their vindictive goals and discriminating against plaintiff where other white retired state troopers received retiree ID cards.

77. Plaintiff is entitled to monetary damages against defendants by reason of the foregoing.

### AS AND FOR A FIFTH CAUSE OF ACTION

78. Plaintiff incorporates by reference the allegations contained in paragraphs numbered through 77.

79. On January 27, 1998, plaintiff received a direct order from Barbaria to "straighten out" his missing weapon problem.

80. When plaintiff attempted to follow the direct order, Defendants set a trap to bring further false charges against the plaintiff through accusing him of misusing the NYSPIN (NEW YORK STATE POLICE INFORMATION NETWORK/Computer System of the NYSP). In bringing the false charges, defendants violated the procedures stated in 3.1 of the Police Administrative Manual. Upon information and belief, Barbaria violated the chain of command and instructed others to violate the chain of command outlined in the Police Administrative Manual in discriminating against plaintiff.

81. Defendants intentionally brought false charges against plaintiff claiming that he misused the NYSPIN when he requested another trooper to run a gun inquiry on his weapon. Plaintiff was following a direct order from Lt. Barbaria to straighten out his gun problem. Defendants created a violation of NYSPIN regulations to further harass plaintiff and create a working environment so hostile that he would be forced to resign.

82. At a hearing held on May 11, 1999, direct evidence was produced showing that on six (6) occasions unauthorized entries were made into the NYSPIN computer in the Newburg Barracks. The unauthorized entry being an entry made utilizing another troopers log on ID. Plaintiff was the only black state trooper in the barracks at the time of the unauthorized use. Plaintiff was the only trooper accused of unauthorized use of the NYSPIN even though it was shown that plaintiff did not operate the NYSPIN computer.

83. During two hearings, one on January 27, 1998 and the other on May 11, 1999, defendants intentionally utilized false testimony of Barbaria and Keats.

84. Keats admitted, under oath, that his previous sworn statement, used to support charges against plaintiff, was false thus stating on the record that he was committing perjury.

85. That Barbaria submitted a report to the New York State Police in February of 1998, approximately two months after plaintiff was charged, where NYSP Administrative manual required the report to be submitted prior to the charges being preferred. Barbaria actually submitted his report after the hearing on the charges which was a violation of NYSP administrative manual.

86. Upon information and belief, NYSP accepted the Barbaria report late so that his report could conform to the false testimony given at the hearing on January 27, 1998.

87. During the hearing on January 27, 1998, plaintiff's counsel made a demand for the Barbaria report and the demand was denied by the biased hearing board.

88. Barbaria falsely testified that he had submitted his report prior to the hearing. When a copy of the report was finally obtained, it was dated 2/04/98 making it clear that Barbaria lied under oath at plaintiff's administrative hearing.

88. On June 10, 1999, the NEW YORK STATE AND LOCAL RETIREMENT SYSTEM BOARD determined that plaintiff had suffered a permanent incapacitation from job related stress and awarded him a disability retirement.

89. The award was a culmination of approximately eleven years of unlawful job related stress imposed on plaintiff by defendants.

90. That by reason of the foregoing, plaintiff is entitled to monetary damages.

WHEREFORE, plaintiff demands judgment against defendants as follows:

On the First Cause of Action . . . . . $6,500,000.00
On the Second Cause of Action . . $5,500,000.00
On the Third Cause of Action . . . . $4,500,000.00
On the Fourth Cause of Action . . $3,500,000.00
On the Fifth Cause of Action . . . . . $3,450,000.00

Dated: Lindenhurst, New York
  March 13, 2000

Respectfully submitted,

Richard J. Merritt (6954)
Attorney for Plaintiff
2 Birs Ave.