**In re Alberto DUQUE RODRIGUEZ and Domino Investments, Ltd., Debtors.**

**John Paul MURPHY, Trustee for Domino, Plaintiff,**

v.

**GENERAL ELECTRIC CREDIT OF TENNESSEE, Defendant.**

**Bankruptcy No. 83–00903–BKC–TCB.
Adv. No. 87–0199–BKC–TCB–A.**

United States Bankruptcy Court,
S.D. Florida.

Aug. 4, 1987.

See also, Bkrtcy., 77 B.R. 937.

Blackwell, Walker, Fascell & Hoehl, Jeffrey Lathe, Miami, Fla., for plaintiff.

Shea & Gould, James D. Wing, P.A., Miami, Fla., for defendant.

## MEMORANDUM DECISION

THOMAS C. BRITTON, Chief Judge.

The trustee for the debtor Domino Investments, Ltd. seeks recovery under 11 U.S.C. §§ 548(a)(2) and 550(a)(1) of $172,114 paid by the debtor to defendant during the year preceding bankruptcy. Default was entered when defendant failed to answer. (C.P. No. 8). Defendant answered a week later (C.P. No. 9) and moved for a trial continuance. (C.P. No. 9a). The continuance was denied, the default vacated and the matter was tried May 21.

This is one of 26 similar actions against various defendants filed simultaneously by this trustee. By stipulation between the parties, the issue of insolvency on the transfer date was tried separately as to all the actions. By a separate Memorandum Decision dated June 26, 75 B.R. 829 (Bankr. S.D.Fla.1987), I have found that Domino was insolvent on the date of this transfer. (C.P. No. 14).

At trial, the trustee abandoned his allegation of actual fraud under § 548(a)(1). It is his burden under § 548(a)(2), constructive fraud, and § 550(a)(1) to prove the transfer (1) to defendant of (2) the debtor's property, (3) during the year preceding bankruptcy, (4) while insolvent, and (5) without receiving "a reasonably equivalent value in exchange for such transfer" from the defendant. I find that he has done so.

■ The material facts are not in dispute. Defendant admits it received ten equal monthly payments totaling $172,114 in the form of checks drawn on the debtor's bank account beginning June 15, 1982 and ending March 4, 1983. All these payments were made within the year before Domino filed for bankruptcy on May 19, 1983.

Defendant has argued that the trustee has not proved the second element, that the transfer involved "an interest of the debtor in property", because the debtor is an offshore holding company which did not itself generate any income. It received income from its wholly-owned subsidiaries including two coffee companies and a bank and from its sole owner, Alberto Duque. Defendant argues that Domino was, therefore, a "mere conduit" for payments of another entity's funds to defendant.

I reject this contention because there is no evidence nor pattern here of payments to Domino explicitly earmarked for defendant and disbursed to defendant within hours or days after they were received. The funds involved were in Domino's account. They were completely unrestricted. They were Domino's property.

■ I find, therefore, that the trustee has carried his burden as to the first four elements and the only serious issue is whether Domino received reasonably equivalent value in exchange.

The payments were made upon a chattel mortgage held by defendant upon a Lear jet owned by International Aviation Investment Company, a wholly-owned subsidiary of Domino. This obligation was not guaranteed by Domino. International's only asset was the aircraft acquired in 1980 and used for the transportation of Duque and personnel of the coffee companies. International did not charge to or receive from the coffee companies or Duque any sums for the use of the aircraft and did not receive any income from any source.

When the jet was repossessed by defendant in 1983, its market value was $475,000. International then owed defendant $1 million. Domino's payments to defendant did not, therefore, increase its subsidiary's net worth. It merely reduced the subsidiary's

potential deficiency judgment while delaying foreclosure. Therefore, the value of the subsidiary as an asset of Domino was *not* increased by Domino's payments.

In *Mayo v. Pioneer Bank & Trust Co.,* 270 F.2d 823, 829–30 (5th Cir.1959), *cert. denied,* 362 U.S. 962, 80 S.Ct. 878, 4 L.Ed.2d 877 (1960), the court recognized that:

> "usually a diversion of corporate assets for the benefit of a third person, such as the payment of the loan of another, is a transfer without 'fair consideration' ".

However, the court concluded that:

> "The requirement of 'fair consideration' is aimed at preventing a bankrupt depleting his estate just preceding his bankruptcy either by improvidence or by action intended to defeat creditors or favor friends."

In light of the statutory purpose, the court refused to find a transfer of the corporate debtor's funds for the payment of the debt of its principal to be constructively fraudulent under the statute, where the creditors of the corporation suffered no harm.

*Rubin v. Manufacturers Hanover Trust Co.,* 661 F.2d 979, 991 (2nd Cir.1981) follows *Mayo* in accepting as 'fair consideration' the indirect benefit received by the debtor from a three-sided transaction.

> "If the consideration given to the third person has ultimately landed in the debtor's hands, or if the giving of the consideration to the third person otherwise confers an economic benefit upon the debtor, then the debtor's net worth has been preserved, and § 67d has been satisfied."

*Mayo* and *Rubin* applied § 67d of the former Act. The comparable phrases in the present law are "reasonably equivalent value", § 548(a)(2)(A), and "value", § 548(c). However, no court has suggested that a different rule would apply today.

As I see it, therefore, the decisive issue is whether the payment of its subsidiary's obligation conferred an economic benefit upon the debtor sufficient to preserve the debtor's net worth. If Domino's payments to defendant had created an equity in the aircraft for Domino's subsidiary equal to

the payments it made or if the continued availability of the plane to Duque and the coffee corporations were equated in this with an equivalent increase in Domino's net worth, I would find that Domino received an indirect benefit from a three-sided transaction which was reasonably equivalent value for the transfers. Obviously, however, it did not. There is no blinking at the fact that on this record Domino's net worth was not increased one iota by the payments it made to defendant. The trustee has proved the fifth element.

■ Defendant implies, though it has not pled nor does it articulate in its argument that International was Domino's alter ego and, therefore, we should pierce and ignore the corporate veil which separated parent and subsidiary. Equity will disregard the veil where the corporation has been organized or employed for an illegal purpose or to mislead or defraud creditors. However, it is settled beyond reasonable dispute that equity will not disregard the corporate veil without a showing of improper conduct. At least that is the rule in Florida where International is incorporated. *Dania Jai-Alai Palace, Inc. v. Sykes,* 450 So.2d 1114 (Fla.1984).

There is no evidence that International was organized or used for any illegal purpose or to mislead or defraud its only creditor, the defendant. It is conceded before me that defendant extended credit primarily upon the value of the aircraft and secondarily upon the guarantees of Duque and General Coffee Corporation, a Domino subsidiary.[1] It placed no reliance on Domino's credit. Defendant has shown no lawful basis for me to treat Domino and International as a single entity.

As is required by B.R. 9021(a), a separate judgment will be entered for the trustee against defendant in the amount of $172,114. Costs may be taxed on motion.

---

**1.** Defendant has filed a claim against Duque's bankruptcy estate for its deficiency.