In re Alberto Duque **RODRIGUEZ** and Domino Investments, Inc., Debtors.

**GENERAL ELECTRIC CREDIT COR-PORATION OF TENNESSEE,** Plaintiff–Appellant,

v.

**John Paul MURPHY, Trustee,** Defendant–Appellee.

No. 88–6138.

United States Court of Appeals, Eleventh Circuit.

March 1, 1990.

Linda Ann Wells, James D. Wing, Joanne M. Rose, Fine, Jacobson, Schwartz, Nash, Block & England, Miami, Fla., for plaintiff-appellant.

Douglas H. Stein, Miami, Fla., for defendant-appellee.

Before VANCE[*] and COX, Circuit Judges, and EDENFIELD[**], District Judge.

EDENFIELD, District Judge:

Appellee John Paul Murphy, is trustee in bankruptcy for Domino Investments, Inc. ("Domino"). Murphy brought this action to void certain payments made by Domino to appellant General Electric Credit Corporation ("GECC"), contending that Domino did not receive "reasonably equivalent value" for the payments.[1] The bankruptcy court found for the trustee and ordered GECC to refund the full amount of the contested payments. 77 B.R. 939. The district court affirmed the bankruptcy court's holding, and GECC now appeals. We affirm.

## FACTS

The facts are not in dispute. Domino was formed as a holding company for assets of its sole owner, Alberto Duque Rodriguez ("Duque") and engaged in no active business. Among Domino's holdings was International Aviation Investment, Inc. ("International"), a wholly owned subsidiary of Domino which, like its parent corporation, conducted no business. Its only asset was a jet aircraft, purchased in 1980 and financed through a $1,175,000 loan from GECC.

From the outset of its financial relationship with International, GECC understood that the plane would be International's sole asset. Accordingly, GECC secured the loan with a chattel mortgage on the jet and with two guarantees. Duque personally provided a guarantee as did Colombian Coffee Company, one of several independent coffee companies owned by Duque. Domino did not guarantee the loan.

Though it had no source of income, International made monthly payments on the GECC mortgage loan for two years. In June, 1982, however, Domino undertook responsibility for servicing the loan. Domino made ten monthly payments totalling $172,114 before allowing International to default on the loan in April, 1983. Repossession followed, but the private jet market was weak. At auction, GECC was able to garner only $475,000 for the plane, leaving International owing a deficiency of $542,314.51.

While the plane had been in International's possession, it had been used by personnel of Duque's coffee companies, as well as by Duque himself. No one had ever paid a fee to International for the privilege of traveling on the plane.

[*] Judge Robert S. Vance concurred in this opinion prior to his death on December 16, 1989.

[**] Honorable B. Avant Edenfield, U.S. District Judge for the Southern District of Georgia, sitting by designation.

1. Under 11 U.S.C. § 548(a)(2), a trustee may void certain transfers made by a debtor within one year of filing for bankruptcy and while the debtor was insolvent. Among the voidable transfers are those in which the debtor "received less than a reasonably equivalent value in exchange for such transfer or obligation." 11 U.S.C. 548(a)(2)(A). The trustee bears the burden of showing that a transfer was not for reasonably equivalent value.

In this case, it is undisputed that the transfers at issue occurred while Domino was insolvent and within one year of Domino's filing for bankruptcy.

Domino's trustee brought this action seeking a refund of the payments made by Domino to GECC, claiming that Domino had not received "reasonably equivalent value" for the payments. Finding for the trustee, the bankruptcy court ordered GECC to refund the payments. The district court affirmed, and GECC now appeals.

## ANALYSIS

The purpose of voiding transfers unsupported by "reasonably equivalent value" is to protect creditors against the depletion of a bankrupt's estate. 11 U.S.C. § 548(a)(2); *Mayo v. Pioneer Bank & Trust Co.*, 270 F.2d 823, 829–30 (5th Cir.1959), *cert. denied*, 362 U.S. 962, 80 S.Ct. 878, 4 L.Ed.2d 877 (1960). Therefore, this provision does not authorize voiding a transfer which "confers an economic benefit upon the debtor," either directly or indirectly. *Rubin v. Manufacturers Hanover Trust Co.*, 661 F.2d 979, 991 (2nd Cir.1981)[2]. In such a situation, "the debtor's net worth has been preserved," and the interests of the creditors will not have been injured by the transfer. *Id.*

The bankruptcy court, whose reasoning was adopted by the district court, held that Domino had received no benefit, either indirect or direct, from the payments to GECC. Relying upon *Rubin*, the court explained:

[T]he decisive issue is whether the payment of [International's] obligation conferred an economic benefit upon the debtor sufficient to preserve the debtor's net worth. If Domino's payments to [GECC] had created an equity in the aircraft for Domino's subsidiary equal to the payments it made or if the continued availability of the plane to Duque and the coffee corporations were equated in this with an equivalent increase in Domino's net worth, I would find that Domino re-

ceived an indirect benefit from a three-sided transaction which was reasonably equivalent value for the transfers. Obviously, however, it did not. (Bankruptcy opinion, pp. 941–42).

The court went on to reject GECC's further contention that Domino had received a direct benefit from the transfers. Since Domino was not liable for repayment of International's indebtedness, Domino could not be found to have benefitted directly from repaying the loan absent a piercing of International's corporate veil. The court refused to take that step, and therefore held that Domino had not benefitted directly from making the payments.

GECC contends that the lower courts erred in three ways. First, it argues that the courts incorrectly considered the market value of the plane, rather than the market value of the loan, in determining what benefit Domino had received from the transfers. Next, GECC argues that the value to Domino of using the plane itself constituted reasonably equivalent value for the loan payments. Finally, GECC contends that the lower courts should have pierced International's corporate veil and found Domino a direct beneficiary of the reduction in International's liability which resulted from Domino's loan payments. Having considered each of GECC's arguments, we conclude that the lower courts were correct in finding for the trustee.

## I. Indirect Benefit

GECC first contends that Domino received "reasonably equivalent value" for its loan payments because the payments entitled International to the use of $1,175,-644, and because Domino benefitted from that infusion of capital into its subsidiary.[3] According to GECC's analysis, the lower courts should have ignored the diminished value of the plane in evaluating the benefit

**2.** In 1979, Congress passed the Bankruptcy Reform Act which superseded the existing Bankruptcy Act of 1898. The earlier version of the current section 548(a)(2), section 67(d)(1)(e) of the Bankruptcy Act, used the term "fair consideration" instead of "reasonably equivalent value." However, decisions applying the relevant section of the Bankruptcy Act have been

adopted as applicable to the new act. *See In re Holly Hill Medical Center, Inc.*, 44 B.R. 253, 255 (Bankr.M.D.Fla.1984).

**3.** As GECC properly notes, Domino has not alleged that the loan payments were unreasonably large given the size of the loan.

which Domino received, and should have considered only the size of the loan which the payments were servicing.

We find this position to be unrealistic. When Domino began making the loan payments on International's behalf, International had already purchased the jet. In exchange for Domino's payments, International did not obtain the use of $1,175,644, since the money had already been spent. Rather, it obtained two other benefits; a reduction in the deficiency which it would eventually owe to GECC, and a reprieve from foreclosure, with the accompanying right to the continued use of the jet. Only if Domino shared in the enjoyment of either of these benefits can the payments have conferred an "economic benefit" upon Domino such that its net worth was preserved by the payments. *Rubin*, 661 F.2d at 987 (1981).[4]

Domino did not benefit from the reduction in International's indebtedness. A review of basic corporations law reminds us that a corporation normally is not responsible for liabilities of its subsidiary. *See* 1 W. Fletcher, *Cyclopedia of Corporations* § 14 (1983). Absent a piercing of International's corporate veil, a prospect which we discuss and reject below, Domino was not liable for International's debt to GECC and did not benefit from reducing that debt.

Nor did Domino benefit from the use of the plane itself. As GECC itself notes,

"[Domino] manufactured nothing, it traded nothing, it operated nothing. It had no income. It was a passive personal holding company which held title to Alberto Duque's assets." (Appellee's Brief, 15). By GECC's own description of Domino's operations, it is evident that Domino could not have made use of an airplane, and that the use of an airplane would not have conferred an economic benefit upon the corporation.[5]

## II. Direct Benefit

■ Next, GECC urges us to pierce International's corporate veil and find that Domino benefitted directly from GECC's loan to International. GECC argues that International was a "mere instrumentality" of Domino, and therefore that International's corporate existence should be disregarded. Nothing in the record, however, suggests that the general rule respecting the separateness of the corporate entity should be ignored in this case. *See* 1 W. Fletcher, *Cyclopedia of Corporations* § 41 (1983).

For the "instrumentality" doctrine to apply, Domino must have had control over International, and the use of that control must have harmed GECC. *Irwin & Leighton, Inc. v. W.M. Anderson Co.*, 532 A.2d 983, 987 (Del.Ch.1987); *Federated Title Insurers, Inc. v. Ward*, 538 So.2d 890 (Dist.

4. Relying upon *In re Holly Hill Medical Center, Inc.*, 44 B.R. 253 (Bankr.M.D.Fla.1984), GECC argues that our common-sense analysis departs from precedent. We find *Holly Hill* easily distinguishable, however. In *Holly Hill*, a third party borrowed money to fund the operation of a debtor. The debtor was the sole beneficiary of the loan and accepted responsibility for the loan payments. As a result of some unwise financial maneuvers, the debtor was forced to make double interest payments, and the debtor's trustee sought to void the second set of payments, arguing that they were not supported by "reasonably equivalent value." Refusing to void the payments, the bankruptcy court held that the debtor's benefit was "access to the money", and that "whether the debtor used sound judgment" in the use of the money was an irrelevant consideration. *Id.* at 255.

Here, unlike in *Holly Hill*, the debtor making the loan payments was not the beneficiary of the loan. GECC lent the money to International, a corporation independent from Domino.

There was no evidence that Domino exercised any control over the use of the loan proceeds such that Domino could have been considered the beneficiary of the loan. Since Domino was not repaying a loan from which it had benefitted, the *Holly Hill* analysis is inapposite.

5. In support of its argument that Domino received "reasonably equivalent value" through the use of the plane, GECC cites *In re Evans Potato Co.*, 44 B.R. 191 (Bankr.S.D.Ohio, 1984). In *Evans Potato*, an individual bought goods on his own account which were then shipped to, and used by, a debtor corporation. Though it had no legal obligation to do so, the debtor corporation paid for the goods. The court found that the debtor had received reasonably equivalent value for its payments because it made use of the goods. The case before us is not analogous. Unlike the debtor corporation in *Evans Potato*, Domino was unable to use the product for which it paid.

Ct.App.Fl.1989).[6] GECC accordingly argues that International was a shell corporation under Domino's control, and that International's sole asset, the jet, was "at Domino's beck and call." (Appellant's Brief, p. 18). This characterization does not comport with the facts. As we have already noted, Domino was itself a shell corporation designed to hold title to assets of Duque. It was not capable of using a plane, much less of having a plane at its "beck and call." In fact, there is nothing in the record to suggest that Domino exercised any control over International whatsoever. Nor was there any evidence of shared officers or intermingling of funds to support a claim that Domino exercised undue control over its subsidiary. *Irwin & Leighton*, 532 A.2d at 987.

Further, there was no evidence of inequity or injustice that would justify piercing International's corporate veil. *See Pauley Petroleum, Inc. v. Continental Oil Co.*, 239 A.2d 629 (Del.1968); *House of Koscot Development Corp. v. American Line Cosmetics, Inc.*, 468 F.2d 64 (5th Cir.1972); 1 W. Fletcher, *Cyclopedia of Corporations* § 41 (1983). The lower courts found, and the record shows without question, that GECC never relied, or had reason to rely, upon the assets of Domino to secure the loan. GECC extended the loan to International based solely on the value of the plane and on guarantees from Duque and Colombian Coffee. Under these circumstances, our refusing to ignore the corporate distinction between International and Domino will work no injustice.[7]

### CONCLUSION

In sum, we agree with the lower courts that Domino neither directly nor indirectly benefitted from the payments it made to GECC, and that the payments should be voided. The record reveals no justification for piercing International's corporate veil

such that Domino could be deemed to have directly benefitted from making the loan payments. As for indirect benefits, the payments reduced International's potential deficiency judgment and entitled International to continued use of the jet; however, neither result benefitted Domino. Rather, the payments drained assets that would otherwise have been available to Domino's creditors without providing the creditors with "reasonably equivalent value" in return.

AFFIRMED.

---

**6.** The lower courts did not decide whether Florida law or Delaware law governed the issue of piercing International's corporate veil, correctly concluding that the result would be the same under either state's law.

**7.** Undertaking these types of transactions was not unusual for GECC. The regional credit manager testified that of the 150 aircraft financing deals in which he had taken part, about one-fourth involved sales to shell corporations whose sole asset would be the financed plane itself.