**In re DVI, INC., et al., Debtors.**

**The Official Committee of Unsecured Creditors, Plaintiff,**

**v.**

**DVI Business Credit, Inc.; DVI Receivables Corp. III, LLC; U.S. Bank N.A., f/k/a First Trust National Association, as Trustee XL Capital Assurance, Inc., Nomura Credit and Capital, Inc.; Harris Nesbitt Corp. and John Does Nos. 1 Through 50 Defendants.**

**Bankruptcy No. 03–12656 (MFW).**

**Adversary No. 03–57446 (MFW).**

United States Bankruptcy Court, D. Delaware.

June 30, 2005.

302

Francis A. Monaco, Esquire, Monzack & Monaco, P.C., Wilmington, DE, Mark L. Weyman, Esquire, Anderson, Kill & Olick, P.C., New York, NY, for the Committee.

Richard S. Cobb, Esquire, Landis, Rath & Cobb, LLP, Wilmington, DE, for the Noteholders.

Guy S. Neal, Esquire, Sidley, Austin, Brown & Wood LLP, Washington, D.C., for Nomura Credit & Capital, Inc.

Richard Levine, Esquire, Weil, Gotshal & Manges LLP, New York, NY, for XL Capital Assurance Inc.

Robert Ward, Esquire, Mayer, Brown, Rowe & Maw LLP, New York, NY, for Harris Nesbitt Corp.

James E. Spiotto, Esquire, Chapman and Cutler LLP, Chicago, IL, for U.S. Bank, N.A.

## MEMORANDUM OPINION[1]

MARY F. WALRATH, Chief Judge.

Before the Court are several Motions to Dismiss the Amended Complaint filed by the Official Committee of Unsecured Creditors of DVI, Inc. (the "Committee") against Nomura Credit & Capital, Inc. ("Nomura"), XL Capital Assurance, Inc. ("XL"), and Harris Nesbitt Corp. ("Harris Nesbitt") (collectively the "Noteholders"), U.S. Bank National Association, as Indenture Trustee (the "Indenture Trustee"), and DVI Business Credit Receivables Corp. III ("REC III"). For the reasons stated below, the Court will deny the Motions.

## I. *BACKGROUND*

On August 23, 2003, DVI Inc. ("DVI"), DVI Business Credit Corp. ("DVI BC") and DVI Financial Services, Inc. ("DVI FS") (collectively "the Debtors") filed voluntary petitions under Chapter 11. DVI is the parent of DVI BC and DVI FS.

DVI BC specialized in providing working capital loans to healthcare providers (the "Providers"), which were collateralized by, inter alia, a security interest in the Providers' accounts receivable. DVI FS extended loans and leases to finance the Providers' purchase of diagnostic and other therapeutic medical equipment.

To raise additional capital, the Debtors securitized the Provider loans. To do so, the Debtors formed trusts, including REC III. Commencing in January 1998, DVI BC transferred to REC III (a wholly-owned subsidiary of DVI BC) its interest in certain Provider loans pursuant to the terms of a Contribution and Servicing Agreement dated January 1, 1998 (the "C & S Agreement"). DVI BC remained as the servicer for the conveyed loans. The obligation to fund the loans to the Providers was assigned to REC III. REC III issued debt securities (the "Notes") under an indenture dated January 1, 1998, and the Indenture Trustee was granted a first priority security interest in the assets of REC III on behalf of the Noteholders. DVI guaranteed the payment obligations of REC III to the Noteholders and guaranteed the servicing obligations of DVI BC. Additionally, DVI BC pledged the stock of REC III to the Indenture Trustee to secure the obligations of DVI BC and REC III to the Noteholders. Further, REC III maintained separate cash collateral accounts (collectively, the "Cash Collateral Accounts") to provide additional collateral for the Notes.

On November 4, 2003, the Committee filed a Motion for authority to commence an adversary proceeding against the Defendants on behalf of the Debtors' estates. On that same date, the Committee filed its original Complaint. By Order dated February 18, 2004, the Court authorized the Committee to file the Complaint, nunc pro

---

1. This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052.

tunc, provided certain amendments were made. In the Amended Complaint, filed on April 16, 2004, the Committee seeks to avoid five categories of transfers as fraudulent conveyances and/or as preferences. Those transfers include: (1) $37 million in transfers resulting from the purchase or replacement by DVI BC of non-performing, defaulted loans in the REC III portfolio with performing loans from DVI BC's portfolio; (2) $35 million in transfers from DVI FS to REC III to provide additional collateral for the Notes; (3) $12 million in transfers from DVI FS to the Cash Collateral Accounts in the week immediately preceding the petition date; (4) $26 million in transfers from REC III to the Defendants in the days immediately preceding the petition date; and (5) the improper termination, immediately before the petition date, of DVI BC's right to service the REC III portfolio of loans.

On June 10, 2004, the Noteholders and Indenture Trustee filed Motions to Dismiss the Amended Complaint. REC III filed a joinder in the Motions on February 7, 2005. The matter has been fully briefed and is ripe for decision.

## II. *JURISDICTION*

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 & 157(b)(2)(A), (F), (H), & (O).

## III. *DISCUSSION*

### A. *Standard of Review*

█ In considering a motion to dismiss under Rule 12(b) of the Federal Rules Civil Procedure:[2]

Courts are required to accept all well-pleaded allegations in the complaint as true and to draw all reasonable inferences in favor of the non-moving party.

The inquiry is not whether plaintiffs will ultimately prevail in a trial on the merits, but whether they should be afforded an opportunity to offer evidence in support of their claims. Dismissal under Rule 12(b)(6) is not appropriate unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *In re Rockefeller Ctr. Props., Inc., Sec. Litig.,* 311 F.3d 198, 215 (3d Cir.2002). The moving party has the burden of persuasion. *Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1409 (3d Cir.1991).

█ "The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case." *Koninklijke Numico N.V. v. Keb Enters. LP,* No. 02–1529, 2003 WL 1746404 at *1, 2003 U.S. Dist. LEXIS 5135 at *2 (D.Del. Mar. 31, 2003). Thus, for purposes of ruling on a motion to dismiss, the allegations as stated in the complaint are taken to be true. *Davis Cos. v. Emerald Casino, Inc.,* 268 F.3d 477, 479 n. 2 (7th Cir.2001); *Steel Valley Auth. v. Union Switch & Signal Div.,* 809 F.2d 1006, 1011 (3d Cir.1987).

█ A motion to dismiss must also be considered in light of Rule 8(a) which provides that "a pleading which sets forth a claim for relief ... shall contain ... 2) a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). "The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Leatherman v. Tarrant County*

---

**2.** Rule 7012(b) of the Federal Rules of Bankruptcy Procedure incorporates Rule 12(b) of the Federal Rules of Civil Procedure in adversary proceedings.

*Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 167, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) *citing Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Because Rule 8 is fashioned in the interest of fair and reasonable notice, not technicality, "[m]ore extensive pleading of facts is not required." *Wynder v. McMahon,* 360 F.3d 73, 77 (2d Cir.2004) (citation omitted).

■ Dismissal under Rule 8(a) "is usually reserved for those cases in which the complaint is so confused, ambiguous, vague or otherwise unintelligible that its true substance, if any, is well disguised." *Kittay v. Kornstein,* 230 F.3d 531, 541 (2d Cir.2000) (citation omitted). "If a court is able to understand the allegations to determine that they state a claim, the complaint satisfies Rule 8." *Id.*

### B. *REC III Insolvency*

■ The Movants contend that the Committee has failed to adequately plead REC III's insolvency which is relevant to the avoidance of the transfers made by DVI BC to REC III. Both parties acknowledge that if DVI BC made a contribution to a solvent wholly-owned entity, the Committee would not be able to state a fraudulent transfer claim. *See, e.g., Murphy v. Gen. Elec. Credit of Tenn. (In re Rodriguez),* 77 B.R. 939, 941–42 (Bankr. S.D.Fla.1987) *aff'd,* 895 F.2d 725 (11th Cir. 1990) (holding that when parent corporation makes a transfer to its wholly-owned subsidiary, the parent receives reasonably equivalent value in exchange if the subsidiary is solvent).

The sufficiency of the Committee's allegations with respect to REC III's insolvency was addressed at the February 9, 2004, hearing. After authorizing the Committee to file a complaint against the Defendants on behalf of the estate, the Court commented:

I would require an amendment to the complaint for more specificity regarding the actual fraud allegations, certainly, but also to require an allegation that [REC III] was insolvent, and to ascertain or to allege exactly when [REC III] was insolvent.

(Tr. February 9, 2004, at p. 46.)

The Movants argue that the Committee failed to follow the Court's directive and, therefore, the entire Amended Complaint should be dismissed. Specifically, they assert that the Committee fails to allege that REC III was insolvent on the date of each transfer.

In response, the Committee argues that the Amended Complaint fully complies with the requirements of Rule 8(a), as well as the Court's directive, by alleging that REC III was insolvent. Paragraph 1 of the Amended Complaint alleges that "[REC III] was undercapitalized from its inception and did not have sufficient assets to provide equity to [DVI BC]." Paragraph 35 contends that "At the time of each of the [transfers from DVI BC of replacement loans, REC III] was insolvent because if the cash flows of the Provider Loans had been adjusted for expected cumulative losses, [REC III's] assets were insufficient to satisfy its obligations to the Defendants under the Notes ... absent the ... transfers from DVI FS." Paragraph 53 alleges that REC III "did not have sufficient capital to contribute to the Cash Collateral Accounts" and Paragraph 95 asserts that "All the [transfers from REC III to the Noteholders] ... were made while [REC III] was insolvent."

The Bankruptcy Code defines insolvency as a "financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation...." 11 U.S.C. § 101(32)(A). Under that standard, the Court concludes that

the Committee has sufficiently pled the insolvency of REC III. The allegations in the Amended Complaint of REC III's insolvency are sufficiently specific: that REC III did not have sufficient assets to provide equity to DVI BC, that REC III did not have sufficient capital to contribute to the Cash Collateral Accounts as required, and that payments to the Noteholders were made while REC III was insolvent. Even allegations of insolvency in general terms comply with Rule 8 and there is no need to allege the particulars. *See Danning v. Lavine,* 572 F.2d 1386, 1388 (9th Cir.1978) (noting that a "general allegation of insolvency in a complaint constitutes an allegation of an ultimate fact and is therefore a sufficient pleading.") (citation omitted). Consequently, the Court finds that the Committee has sufficiently plead REC III's insolvency.[3]

The Movants argue, however, that this Court directed the Committee to allege *when* REC III was insolvent and the Amended Complaint fails to do so. The Movants contend that the facts alleged pertaining to the "when" aspect of REC III's insolvency must fail since as a matter of law, because the Committee can prove no set of facts in support of this claim. *See, e.g., Mellon Bank, N.A. v. Official Comm. of Unsecured Creditors of R.M.L., Inc. (In re R.M.L., Inc.),* 92 F.3d 139, 153 (3d Cir.1996) (holding that, for purposes of section 548, solvency is measured at the time the debtor transferred value, not at some later or earlier time).

The Movants' argument is unpersuasive, however, because paragraph 35 of the Amended Complaint does allege that REC III was insolvent at the time of each transfer. The Court cannot conclude that the

Committee can prove no set of facts in support of its insolvency claim that would entitle it to relief. The Amended Complaint will not be dismissed on this ground.

## C. *Judicial Estoppel*

■ The Movants, relying on the doctrine of judicial estoppel, also request that the Court dismiss the Amended Complaint in its entirety because the Committee has taken inconsistent positions with respect to the issue of REC III's insolvency. On November 24, 2003, the Committee sought to enjoin the Noteholders from exercising their remedies because such action allegedly would reduce DVI BC's $30 to $50 million of equity in REC III. (*See* Tr. December 1, 2003, pp. 162–63.) In support of its request for an injunction, the Committee submitted an affidavit of Terry Cady, then President and CEO of DVI BC, stating that REC III had an equity value of at least $30 million. Movants argue that the Committee now takes a contrary position in this adversary proceeding by alleging that REC III was insolvent.

In response, the Committee contends that this Court has already rejected the identical argument when it was first raised by counsel for XL at the February 9, 2003, hearing. The Court concluded at that time that the principle of judicial estoppel required that the Committee have taken a position and actually won in order to be precluded from a contrary position now. In this case, though the Committee had taken a contrary position earlier, it had not won. (*See* Tr. February 9, 2003 at pp. 33–34.) The Committee contends that, in granting it authority to pursue this adversary proceeding, the Court necessarily rejected the Noteholders' argument that ju-

---

**3.** "Rule 8 would become a dead letter if district courts were permitted to supplement the Rule's requirements through court orders demanding greater specificity or elaboration of legal theories, and then to dismiss the complaint for failure to comply with those orders." *Wynder v. McMahon,* 360 F.3d 73, 77 (2d Cir.2004).

dicial estoppel precluded that suit; it should do so again.[4]

■ There are three requirements that must be met before judicial estoppel applies: "1) the party to be estopped must have taken two positions that are irreconcilably inconsistent; 2) judicial estoppel is unwarranted unless the party changed his or her position in bad faith, *i.e.*, with intent to play fast and loose with the court; and 3) a ... court may not employ judicial estoppel unless it is tailored to address the harm identified and no less sanction would adequately remedy the damage done by the litigant's misconduct." *Montrose Med. Group Participating Sav. Plan v. Bulger*, 243 F.3d 773, 779 (3d Cir.2001) (internal citations omitted).

■ Even if the Committee has taken inconsistent positions,[5] the Court must still find that the Committee changed its position in bad faith. Two elements are necessary for a finding of bad faith: 1) the Committee acted in a manner that is somehow culpable; and 2) the Committee must have engaged in culpable behavior vis-a-vis the Court. *Id.* at 780. The *Montrose* Court specifically concluded that "it does not constitute bad faith to assert contrary positions in different proceedings when the initial claim was never accepted or adopted by a court...." *Id.* If a party's initial position was never accepted by a court, "then it is difficult to see how a later change manifests an 'intent to play fast and loose with the court[s],' ... anymore than pleading inconsistently in a single action does." *Id.* at 782.

The Committee's position that REC III had equity of $30 to $50 million was never accepted by this Court in the prior proceeding. In fact, the Court denied the Committee's request for an injunction. (*See* Tr. dated February 9, 2003, at pp. 166, 185–86.) Thus, the element of bad faith is not met. Therefore, the doctrine of judicial estoppel does not preclude the Committee from pleading REC III's insolvency in this adversary. The Court will deny the Motions to dismiss on this ground.

### D. *Identification of Transactions*

■ The Movants seek to dismiss the Amended Complaint because they contend that the Committee fails to plead with specificity the transactions that fall within section 548. Instead, Movants complain that the Committee lumps all the transactions together. Specifically, the Movants allege that, of the transactions listed in paragraph 36 of the Amended Complaint, only one transaction for United Healthcare Products was made within a year of the petition date. The Movants contend that the Amended Complaint must delineate which of the transfers it is attempting to recover under section 548 (which covers only transfers within one year of the petition) and which it is seeking to recover under section 544 (which incorporates state statutes).

The Committee responds that for each of the transfers the Amended Complaint states the date and amount, as well as other details. The Committee asserts, for example, that paragraph 59 identifies twenty-eight payments made into the Cash

---

4. Moreover, the Committee maintains that Rule 8 expressly allows a party to take inconsistent positions, even in the same pleadings. Fed.R.Civ.P. 8(e)(2).

5. The Committee contends that it did not take inconsistent positions because its allegations

concerned different times and REC III could have been insolvent at one time and solvent at another. It is unnecessary to determine whether the Committee has taken inconsistent positions because, even if it had, the doctrine of judicial estoppel is inapplicable.

Collateral Accounts all of which occurred within the one-year period under section 548. In addition, the Amended Complaint in paragraph 90 identifies transfers which were made within one week prior to the petition. The Committee also notes that the transfers set forth in paragraph 93 clearly occurred within the one-year period governed by section 548. Finally, with respect to the transfers that fall outside the one-year period, the Committee maintains that they are avoidable under section 544.

The first ninety-nine paragraphs of the Amended Complaint include general factual allegations which are incorporated by reference in each of the four counts. Each count of the Amended Complaint also adopts the allegations of the preceding counts. Thus, the Amended Complaint has incorporated all the transfers under the fraudulent conveyance count, even those that are irrelevant.

This type of pleading has been referred to as a "shotgun" pleading by some courts. "The typical shotgun complaint contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions. Consequently, in ruling on the sufficiency of a claim, the trial court must sift out the irrelevancies, a task that can be quite onerous." *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir.2002) (citation omitted).

The Court concedes that the drafting of the Amended Complaint makes it difficult to understand. The defendants should not have to guess which transfers fall within each of the Committee's various legal claims. Nevertheless, the inclusion of some irrelevant transfers under Count I, is not grounds for dismissal. "Rule 8's 'liberal pleading principles' do not permit dismissal for 'failure in a complaint to cite a statute, or to cite the correct one.... Factual allegations alone are what matters.' " *Wynder*, 360 F.3d at 77.

The factual allegations with respect to the various transfers meet the requirements under Rule 8 for valid claims for relief under section 548 or 544. The Court will not dismiss the Amended Complaint on this basis.

### E. *Fraudulent Transfer Claims*

The Movants also contest the validity of the factual allegations in the Amended Complaint with respect to the transfer of replacement loans by DVI BC. They assert that, by the Committee's own admission, all those transfers were made pursuant to the C & S Agreement. The Movants argue that under the C & S Agreement if any of the Provider loans which had been transferred to REC III went into default, DVI BC was required to purchase or replace that loan. Therefore, if DVI BC had not made the challenged transfers, REC III would have had a claim against DVI BC for the repurchase of loans. Thus, the Movants argue that there can be no fraudulent conveyance because, as a matter of law, a repayment of a debt to a bona fide creditor is not a fraudulent conveyance. *See, e.g., Equitable Bank v. Miller (In re Miller)*, 39 F.3d 301, 307 (11th Cir.1994).

Further, the Movants assert that the Committee has failed to account for the value DVI BC received in exchange for its transfers. Specifically, the Amended Complaint makes no reference to what DVI BC may have received from the loans it took back from REC III.

Most of the discussion in the Motions to Dismiss is spent in contesting the factual allegations of the Committee's Amended Complaint. In considering a motion to

dismiss, however, the Court must treat all well-pleaded facts as true. Rule 12(b)(6) requires that only if no set of facts would entitle the plaintiff to relief should a motion to dismiss be granted. *Rockefeller Ctr. Props.*, 311 F.3d at 215. In this case, the Committee has pled sufficient facts to state a cause of action. To the extent the Movants disagree with those facts, they may contest them at trial. The Court will deny the Motions to dismiss on this ground.

### F. Equitable Subordination Claims

■ The Movants contend that the Committee has no authority to prosecute the equitable subordination claims in the Amended Complaint. Specifically, the Committee was given authority only to investigate and bring an action under sections 544, 547 and 548 of the Bankruptcy Code as stipulated by the Committee, the Debtors, the Noteholders and the Indenture Trustee on the record at the hearing held on September 25, 2003. The Movants contend that the Committee never sought to reserve the right to challenge any other provision of the Forbearance Order or to bring any additional claims.

In response, the Committee contends that the Order authorizing them to bring this action specifically authorized the Committee to commence an adversary proceeding "to recover fraudulent conveyances and other claims ... specifically identified in the Proposed Complaint that was filed by the Committee on November 4, 2003." In the Proposed Complaint, the Committee sought "the equitable subordination, pursuant to 11 U.S.C. § 510(c), of any claims of the Defendants against the estate." (Complaint at ¶ 47.) The Committee contends that the Movants are precluded from challenging that authority under the "law of the case" doctrine. *See, e.g., AL Tech Specialty Steel Corp. v. Allegheny Int'l*

*Credit Corp.*, 104 F.3d 601, 605 (3d Cir. 1997) ("The law of the case doctrine applies ... both to issues expressly decided by a court in prior rulings and to issues decided by necessary implication.") (internal quotations omitted).

The Committee argues that, in any event, it seeks equitable subordination as a remedy, not as a separate claim for relief. *See, e.g., Citicorp Venture Capital, Ltd. v. Comm. of Creditors Holding Unsecured Claims*, 160 F.3d 982, 990–91 (3d Cir.1998) (holding that equitable subordination is an equitable remedy and not necessarily a separate claim for relief).

There are no findings or recitals in the Authorization Order which would prevent the Committee from seeking equitable subordination of the Defendants' claims. In fact, the Authorization Order refers to the Proposed Complaint which included a request for equitable subordination. The various Defendants had ample opportunity to object to the Committee's motion for authority to file this adversary proceeding. Under the law of the case doctrine, the Court will not revisit this issue.

■ In addition, section 510(c) of the Bankruptcy Code gives bankruptcy courts broad equitable powers to subordinate a claim on equitable grounds. There is no Bankruptcy Code provision or binding case law that would preclude the Committee from pursuing equitable subordination of the defendants' claims in order to obtain complete relief on its preference and fraudulent transfer claims. *See, e.g.,* Ponoroff & Snyder, *Commercial Bankruptcy Litigation*, § 10:46 (2004) (noting that "equitable subordination may operate in tandem with the trustee's power to set aside fraudulent transfers in situations where the court determines that the creditor should be deprived of any remedy against the estate"). "If a complete remedy is to be provided for creditors harmed

(beyond the loss resulting from the preference) by the preferred creditor's fraudulent or inequitable conduct, the guilty creditor's remaining unsecured claim also must be subject to subordination under section 510(c)." *Id. See also Wilson v. Huffman (In re Missionary Baptist Found. of Am.)*, 818 F.2d 1135, 1147 (5th Cir.1987) (noting that some courts have ordered subordination even though a claim was voidable as a preference or a fraudulent conveyance) (citation omitted).

 The Movants further assert that the Committee has failed to allege, and has no basis to allege, the type of active, willful misconduct on the part of the Noteholders and the Indenture Trustee that is one of the requisite elements of a claim for equitable subordination. *See, e.g., Citicorp Venture Capital, Ltd.*, 160 F.3d at 986. However, the Amended Complaint does allege that the Noteholders knew or should have known that REC III was insolvent at the time the Debtors transferred funds to it and that the Noteholders took action to force transfers from REC III to them.

It is unnecessary for the Court to determine at this stage of the proceeding whether the Committee is able to prove the type of active, willful misconduct on the part of the Noteholder Parties and the Indenture Trustee necessary to establish a claim for equitable subordination. Rather, under Rule 8, the Amended Complaint need only give the Defendants notice of the Committee's request for equitable subordination and the basis for that request. The Amended Complaint does this. Therefore, the Court will deny the Motions for dismissal on this ground.

### G. *Identification of Preferences*

 The Movants contend that the Complaint fails to provide even rudimentary facts surrounding the alleged preferen-

tial transfers such as the date and amount of the transfer, the payee, and the payor. Rather, they complain that Count III just recites the statutory language of section 547(b). The Movants maintain that a plaintiff must do more than merely recite statutory language to survive a motion to dismiss.

In response, the Committee contends that the Amended Complaint is sufficient. *See, e.g., Valley Media, Inc. v. Borders, Inc. (In re Valley Media, Inc.)*, 288 B.R. 189, 192 (Bankr.D.Del.2003) (holding that to survive a motion to dismiss a preference complaint must contain (a) an identification of the nature and amount of each antecedent debt and (b) an identification of each alleged transfer by (i) date, (ii) name of debtor/transferor, (iii) name of transferee and (iv) the amount of the transfer).

The Amended Complaint adequately pleads a preference claim by clearly identifying the nature and amount of each antecedent debt and by identifying each improper transfer by date, name of debtor/transferor, name of transferee and the amount of the transfer. (*See* Amended Complaint at ¶¶ 36, 59, 90, 93.) The Committee concedes that some of the referenced transfers occurred outside the preference period and therefore, though avoidable as fraudulent conveyances under section 544, are not avoidable as preferences under section 547. However, this is insufficient to warrant dismissal of the Amended Complaint. The Defendants have sufficient notice of which transfers the Committee seeks to avoid and the legal bases for their avoidance. Consequently, the Court will deny the Motions to dismiss the Amended Complaint on this ground.

### H. *Resignation as Servicer*

 The Committee alleges in Count IV that the pre-petition resignation of DVI

BC as servicer for REC III is an avoidable preference. The Movants contend that Count IV should be dismissed as a matter of law because the servicing termination did not constitute the transfer of an interest in property of DVI BC. *See, e.g., Edwards v. Fed. Home Loan Mortgage Corp. (In re LiTenda Mortgage Corp.),* 246 B.R. 185 (Bankr.D.N.J.2000) *aff'd* 276 F.3d 578 (3d Cir.2001) (holding that the pre-petition termination of a contract pursuant to its terms and the consequent cessation of a debtor's rights thereunder is not avoidable under section 547(b) or 548(a)).

The Movants contend that because the Debtors conceded that a default giving rise to a servicing termination right existed under the C & S Agreement at the time DVI BC resigned, DVI BC no longer had an interest in property to transfer. Finally, the Movants contend that the Amended Complaint does not (and cannot) allege harm because DVI BC was reappointed as servicer (and paid) until April 2004, when DVI BC terminated the servicing relationship on its own volition.

In response, the Committee contends that the Movants' reliance on *LiTenda* is misplaced. In that case, the Court found that the contract ceased to exist by its own terms when the defendant gave notice of termination to the debtor. In contrast, the Committee alleges that the Temporary Waiver Agreement, by which DVI BC's rights to service the REC III portfolio were terminated, was a result of coercion. (*See* Amended Complaint at ¶¶ 81 & 82.) Further, the Committee argues that the signatory to the Temporary Waiver Agreement, Terry Cady, lacked corporate authority to bind the Debtors.

Whether there was a lawful prepetition termination of the servicing rights is a disputed issue of fact. This cannot be adjudicated in the context of a Rule 12(b)(6) motion. Therefore, the Court concludes that dismissal of Count IV under Rule 12(b)(6) as a matter of law is improper.

## IV. CONCLUSION

For the reasons set forth above, the Motions to dismiss will be denied.

An appropriate order is attached.

### ORDER

AND NOW this **30th** day of **JUNE, 2005,** upon consideration of the Motions to Dismiss filed by Nomura Credit & Capital, Inc. ("Nomura"), XL Capital Assurance, Inc. ("XL"), and Harris Nesbitt Corp. ("Harris Nesbitt") (collectively the "Noteholders"), U.S. Bank National Association, as Indenture Trustee (the "Indenture Trustee"), and DVI Business Credit Receivables Corp. III ("REC III") and the response thereto by the Official Committee of Unsecured Creditors of DVI, Inc., and for the reasons set forth in the attached Memorandum Opinion it is hereby

**ORDERED** that the Motions to Dismiss are **DENIED.**